calendar. It is United States versus Katz 25-981. Thank you, your honors. Aaron Katz representing appellant David Katz. If I could reserve three minutes for rebuttal, please. Your honors, the government charged David Katz with conspiring to obstruct the IRS through deceitful and dishonest means, filing false currency transaction reports. The factual allegation that tied those two sets of charges together was that David Katz knew that the Miguel Lopez name was a false alias and that the identification documents that Miguel Lopez had presented to him were forgeries. David's knowledge of that fact under either an actual knowledge or deliberate indifference standard was essential to proving the CTR counts and proof that David knowingly filed false CTR reports is what enabled the government's argument that David did not merely know that downstream tax evasion was or might be occurring, but that he agreed to join the scheme and obstruct the IRS through deceitful means. So your first argument's a Jackson argument about the sufficiency of the evidence? Your honor, I want to focus on the exclusion of the critical impeachment evidence that would have impeached what we say is the linchpin of the government. So what evidence is that? That's evidence of the Woodburn fraud dock ring bust in 2017. So I want to understand your Woodburn argument. Your Woodburn argument is that there was an investigation of an operation in Woodburn sometime prior to this case, correct? There was actually a bust during the actual investigation, yes. And that investigation, I'm trying to take the facts in the light most favorable to you, turned up the fact that that operation had the ability to make high-quality identification documents. And had done so for more than a decade and had produced... Okay, yeah, okay. I mean, you don't have to, this is not a jury argument. If you just say yes to the questions I ask them, then maybe we can move to my real question. And so in order to make that relevant, you would have to establish one that this, that the Now we're working with each other. And second, that the ID he got was high-quality. I don't agree with that. Well, because your whole point was, he said, the witness said, this was a low-quality ID and that's why Mr. Katz should have known it was a phony ID. And as I understood your briefing, you said, well, there was a high-quality operation in Woodburn and he'd got it in a low-quality ID. So I agree with that, but I disagree with, just slightly, with the way you framed it previously. So I think the conditional fact that the jury needed to be able to find reasonably, by a preponderance, is that the ID did come from the Woodburn Fraud Duck Ring. Okay, see, but here's, here's my difficulty. Now that I've walked you through it. We have to have a little side trial here. The judge says, she said 403 at some point and another point 104, but let's focus on 403 for a moment. Now we're going to have a trial about whether or not he bought this from this operation, whether if he did it and then it was high-quality. And that's the kind of side trial I don't need in a, that, that will distract the jury. This is a 403 issue in which I have a lot of discretion. So if this were clear, if he said, yes, I bought it from there and their record shows that he bought it from there and that it was a high-quality ID, maybe, but we're going to have to try all these other issues. And it, that's why I'm bothered by your position that, well, the judge erred in not letting it in. So deal with that for me. Yeah. So I'd say, first of all, the reason we don't have what I call metaphysical certainty about where the evidence, where the ID came from is because the government had destroyed the evidence. Well, but the government, let's assume your spoliation argument loses because it happened way before your, your client was charged. Well, it happened during the investigation of my client. So these investigations were parallel. Correct. Before he was charged. Let's assume for a moment, you can make your spoliation argument, but let's assume you lose on it. And that's why I'm focusing on the 104B argument. The metaphysical, he says metaphysical certainty. Counsel, it seems to me entirely speculative who made this, this fake ID and then whether it looked like cardboard or whether it looked legitimate. There's just so many steps removed. Hence, Judge Hurwitz's question, I'm sure about 403. And this is a trial within a trial. So, so what's the best shot you've got that your client's ID came from this Woodburn fake ID operation? So Huddleston says you have to look at all the evidence that's introduced in the record to establish the conditional fact. And here you had two witnesses saying, we got the IDs from Woodburn. Who are the two witnesses? Lopez Diaz or Victor Hugo Lopez Diaz. Is Woodburn a town, a geographic location? So it is, it's a small town. It's about 40 or 50,000 people. And Mendoza, his accomplice, said that they got it from a place that was, quote, famous with Latinos in Woodburn. And I think a jury could reasonably conclude that there are not multiple places that are famous among Latinos in Woodburn that produce IDs, social security cards. It's not just the ID. This is social security cards and other papers that were also produced for these individuals. Perhaps they could, but it still seems very speculative. And it's a trial within a trial. And isn't all of this abusive discretion? I think under Huddleston, the only question is, could a jury reasonably infer that if you're getting your ID and your social security card from a place famous with Latinos in a town of 40 or 50,000 people, that that is the same operation that the feds busted in 2017? My difficulty with that is that the record doesn't seem to suggest that all they produced were high-quality IDs. Maybe they had a menu. You want a really high-quality ID, it's $100. We'll give you a lower quality one for $50. And so now we've got to determine that this operation only produced high-quality IDs and that the witnesses bought the high-quality IDs as opposed to the low-quality IDs. That's a trial within a trial, isn't it? I think juries do trials within trials all the time. The jury had to decide here whether Lopez Diaz was- Judges exclude evidence on this basis all the time, especially when the trial court is looking at the other reasons that the jury had to lead to the conclusion that your client had reason to be questioning this ID, including that he had used more than one of them. He used different IDs during the course of this period, right? Different social security numbers, I think? Well, so there was evidence that there was a second ID that was never presented. It was an updated ID that was never presented to my client. It was presented to a lady. But the records show that transactions were conducted using different social security numbers. There was a second social security number that was used. But I think the jury could certainly conclude, and this is beyond a reasonable doubt, Senator, the jury could certainly conclude that if the new customer card had a different social security number, my client would not have sort of reflexively known that when the CTRs were being filled out. So what about the evidence at the initial meeting, your client produced an ID, but I think the inference is that they shared a chuckle because he produced an ID with one name on it, but he introduced himself reflexively with his actual name, and they shared a chuckle because those didn't match. Right. So all of this evidence that my client knew or should have known that this ID was false or the identification, this alias was also false, comes from one witness, Lopez Diaz, the cooperator who has an incentive to say what the prosecutors would find favorable to their case. The linchpin to his testimony is saying, I presented this flimsy piece of cardboard to Mr. Katz. He must have known that it was fake. If that testimony is blown up through impeachment evidence or even undermined through impeachment evidence, his credibility is in tatters. This is a sort of an example of a witness gilding the lily. And once the jury finds that he's exaggerating one fact, he's exaggerating all facts. Would not rely on what Judge Horace was asking you initially, that to show that he was lying and exaggerating when he said the ID looked like cardboard, you'd have to show that it was a high quality ID, not just that it may have come from some place in Woodburn, but that it was actually a high quality ID. I don't think we'd have to show. I think the jury would have to infer that. I think under 104B in Huddleston, the conditional fact that we're not talking about 104B. That's why I keep turning you back to 403. Well, let's assume the 104 ruling was wrong. I'm still stuck with the judge saying initially, oh, come on. This is this is more prejudicial than probative. It's likely to confuse the jury. We review that with great deference. And so I'm still stuck with this. Boy, we're going to have this whole side trial on where he bought it, how high quality it was, whether it was whether there was only one operation in Woodburn or more, whether or not. And so that's why I'm focusing on 403, not 104. So if it's a 403 analysis, I would say two things. Number one, the judge in her written order did not actually refer to 403. We can affirm on any basis. And certainly she originally said 403. In the hearing, I agree. She made a reference to 403. But under this court's decision in Haysher and under Evans as well, using 403 to exclude, frankly, the only evidence that the defense would have had in its arsenal to impeach this test, this critical testimony about the license and the quality of it, that is error. That is an abuse of discretion. 403 does not allow a court to just say this is going to confuse the jury. This would have taken, frankly, this is 10 minutes of cross-examination or 20 minutes of witness testimony if we had to call a case agent and put the plea agreement in the in order in through this court's decision in Mirabal. This is not a mini trial. This goes to wait. It's not going to lead to something the jurors could look at because your contention in the spoliation claim is that if we get past what I think is pretty speculative, that this outfit in Woodburn created this ID and the ID was really sneaky and really looked authentic that it was later destroyed. So this doesn't get to a place where they're going to be able to see it. It's still a matter of witnesses then talking about whether the ID looked convincing or not. True. But if a jury knows that there was a prolific fraud dock ring in Woodburn that was operating at the exact same time as this ID was procured and presented to Mr. Katz, and it was busted by the feds, there's no other Woodburn ring that has busted the feds. I'm assuming that's an easy thing to conclude. The harder part is that he bought a, that he didn't buy a low quality ID from them. What you're saying is, well, they had really good equipment, so they probably didn't produce low quality IDs.  You can go to a steakhouse and get bad meat, right? I mean, I go to stores all the time that sell high quality goods and low quality goods. But I think when you're talking about critical impeachment evidence on a key part of the cooperating witnesses story, it's a very low bar for relevance, right? So would it make it more likely than it otherwise would be? That's stuck on relevance. But Your Honor, once it's relevant and you then turn to a 403 analysis under this court's decision in Haysher, it's almost abuse of discretion per se to exclude evidence that goes to the core of the cooperating witnesses testimony. It does go to the, and that's why I wanted to push back on you a little bit. It goes to the core of the cooperating, maybe, maybe it doesn't, but let's assume that it does. Here's the difficulty with the case from, I think, your client cashes $177 million worth of checks on which the people who have come to him have to pay a very hefty fee, over a million dollars.  Boy, that just screams fraud to me. So, Your Honor, as you pointed out in your concurring decision in Mo, in a lot of these conspiracy cases, really the heart of the matter is whether there's knowledge of downstream misconduct or an agreement to help facilitate it. And I'm assuming willful, I'm assuming willful, willful ignorance is enough. I know you contest that. And that's fair. Here, the CTRs, if my client had believed that he was filling out the CTRs with the accurate name, accurate address, accurate social security number, the filling out of the CTRs is the single most exculpatory fact in the whole case because it literally is providing FinCEN, and therefore the IRS, all of the information they need to find the people that are actually taking all of this cash. But the government was then able to spin the CTRs into the conduct that satisfies the Caldwell standard because they said he knowingly filled out false CTRs. I guess what I'm pushing back on is this, somebody in the check cashing business surely must know that you can go to a bank and deposit checks for nothing. And somebody comes to you over the course of years with $177 million worth of checks for which you pay a million dollars in check cashing fees. Doesn't that suggest that there's, that somebody is trying to hide who they are? So, so, so, so maybe, maybe there was evidence in the record that people don't go to banks because there are long delays in getting the checks cashed. Workers need cash right away. So there are legitimate reasons to go cash large amounts of checks. But the bigger point on the conspiracy is that if my client, if the jury had concluded that my client did not knowingly file false CTRs, he was, he actually thought he was filing correct CTRs, giving the IRS and FinCEN all of the information that they would need to track down, do the investigation. Then the filing of the CTRs is exculpatory. It proves that he's not in a conspiratorial agreement. Counsel, did you want to reserve any time? I had asked for three minutes. You're at 38 seconds. Oh, I'm sorry. I thought you had adjusted it to, I guess I'll give up my rebuttal time then. But I would, I would point out that in the government's closing argument, the government's closing argument relied on the false CTRs as the proof that my client agreed to the conspiracy. They talked about that being the thing that led the IRS down the rabbit hole and the false CTRs. This is the evidence, the Woodburn fraud duck ring evidence that would have impeached the absolutely critical part of Lopez Diaz's testimony to establish that the CTRs were knowingly false by my client. Thank you, Your Honors. You're welcome. Counsel, you should plan on one minute for rebuttal. Go right ahead, please. May it please the Court, Andrew Ho appearing on behalf of the United States. Your Honors, this Court, Your Honors, as this Court has already discussed, the trial court, the district court excluded this Woodburn evidence because it was purely speculative. There was no evidence connecting the cooperating witness, Lopez Diaz, to this Woodburn outfit. There was no evidence showing that he had obtained the ID from the Woodburn outfit. And in fact, as a court, as a district court noted, the evidence that the defendant wanted to present through the plea agreement really had to do with the implements that were found at the time of the seizure in that Woodburn outfit back in 2017. That was to show that they were high quality. And he says it's a very tiny town. It was, I don't know how far away it was, but it was a very small town and that there was this large operation there and that there was testimony that he got his ID over in Woodburn. I mean, I think you said there's no evidence, but I don't agree with that. He's got this much for sure. Sure. Yes, Your Honor. Why isn't that enough? If it's a well-known ID operation and it's just next door, why isn't that sufficient? So, Your Honor, as the trial court articulated, it was pure speculation that this particular witness in 2007 got his ID, got a high quality ID for that matter, from this same outfit that was then later seized in 2017. Well, let me change the facts on you a little. Let's assume on cross-examination, Mr. Katz's counsel had said to the witness, isn't it true that you got your ID from whatever this operation was? And he said yes. Now that's not in this record, but let's assume that happened. Would we then really have a 403 issue? Your Honor, I believe if they had established that he had received the ID from the exact same operation, then it would be relevant and there could be further cross-examination. Now, my question is, did the judge exclude that kind of question or just the evidence of the existence of the other operation? Well, Your Honor, in this case, the defendant wanted to introduce evidence through that plea agreement, through the separate plea agreement from a separate investigation. Of what? Of what? The instrumentalities used in the operation, that they were capable of producing very high-quality IDs. Correct. That the instrumentalities of that operation and then to argue from that inference or argue the inference that it was a high-quality ID. See, I'm trying to put myself in the shoes of defense counsel here. The judge says, I'm not going to let you do that. And so he really shouldn't then ask the witness, did you buy it from this place and isn't it true that it was high-quality? But if the judge, if he could ask those two questions, then would the 403 issue become easier? Your Honor, I believe in that. In that circumstance, it would be easy. It would be relevant. See, that's my problem. I don't know whether the judge really forbade him from setting up the foundation for asking those questions by excluding the evidence. I don't believe that the judge did. The matter here and the way it was dealt at the pretrial conference is that based on interviews done with that witness, that witness didn't recognize the name and wasn't able to identify any further details other than the fact that the ID came from Woodburn. So on those bare facts alone, any sort of further inference about it coming from this separate investigation and it being of a high-quality ID would have been pure speculation. But he wasn't required to accept the witness's pretrial investigation, so I'm still trying to figure out why he shouldn't have been allowed at trial to say to the witness, didn't you get it from this operation? Witness says yes. Maybe he says I don't know, and then we have to stop at that point. But was he prevented from at least asking those questions? Your Honor, I don't believe so. I believe that on direct, the witness was asked, where did you receive the ID? He talked about the circumstances of getting the ID in Woodburn. If there were any other identifying information that would allow the witness and perhaps saying if the witness had said I received it from Maresias Lopez, who was the defendant in that other investigation, certainly that would go towards showing that it was from the same ring. But the fact is there were, based on the bare facts in the plea agreement and based on what the witness had testified to, there simply wasn't anything there to draw the connection between that witness and the Woodburn operation. And are we talking about this, when we say ID, are we talking about a social security card? We're talking about a driver's license, Your Honor. Okay, so there's two social security cards, or two social security numbers. He uses two different social security numbers, forgive me, over the course of this operation. Yes, Your Honor, with respect to that witness. Right. Did this witness, he was a cooperating witness? He was a cooperating witness. And did he get some benefit from that? He did receive a benefit, and that was a subject of extensive cross-examination by defense counsel. And the standard jury instruction regarding how the jury should view any cooperating witness testimony skeptically, more skeptically than a witness, was also provided to the jury in this case. Okay, so you're sort of anticipating what I was questioning because the opposing counsel said that, you know, this cross-examination about this Woodburn forgery ring was the only way to impeach this witness, but he was a cooperating witness, there were jury instructions about the weight of his testimony, and he was questioned about his benefit at trial and impeached in front of the jury. Yes, Your Honor. He was subject to substantial impeachment at trial. And I would also just note that this, I would disagree with the characterization that this ID really was sort of central to this case. Really the clearest evidence that this person was not who they were, and they were using two different Social Security numbers or a false Social Security number, is the fact that he was checking or caching tens of thousands of checks at the defendant's business with two Social Security numbers. So that's the clearest indication right there that some false information has been provided by that witness. Right. So, yes. But there's several indications, including their initial meeting that we just talked about a minute ago where they shared a laugh because the ID didn't match the way he introduced himself. Then his use conducted, as you say, many, many transactions for many millions of dollars using two different Social Security numbers. What I was trying to get around to is, was there indication that the Social Security cards also came from Woodburn? Your Honor, I don't believe that information. I didn't find it either. Okay, so it's just the driver's license? Correct, Your Honor. All right. Judge Beatty, do you have anything else? No. Judge Hurwitz? No. Anything else from the government? No, Your Honor. Thank you. Okay, thank you. Your Honor, in United States v. Haysher, this court said that using 403 to exclude impeachment evidence of the government's key witness is an extraordinary remedy that has to be used sparingly. This wasn't the only way to impeach the witness, obviously, but it was the only way to directly impeach this testimony on the driver's license. Without it, you're just swinging around saying you're a cooperating witness, you're trying to get a benefit. This went to the heart. And this testimony that you needed to impeach, what had to do with the authenticity or the convincingness of the driver's license? Correct, because if you present this flimsy piece of cardboard that anyone would have known was a fake and he then laughs about it, it shows that he's in on the scheme right away, and that he knows that the CTRs that he's going to be filing are not going to help the IRS. They're going to actually impede the IRS by, in the words of the government, throwing a wrench into everything and creating a four-year rabbit hole. In the government's closing argument, they said the defendant caused the four-year rabbit hole. I submit to you that proves an agreement to obstruct the IRS through deceitful and dishonest means. What about the testimony on this fake ID, right? Victor told you. He told you, in his view, it was easy to tell it was a fake. No questions asked, though. This is how the government argued the case, that David Katz knew from the jump that this name and this social security number that he was putting on these CTRs was not right, that it was fake, and that it would actually impede the IRS. And I think there actually was testimony in the record, if I'm recalling correctly, from in Woodburn that they got the false driver's license from. And Lopez Diaz, on cross, said it was famous among Latinos. Mendez said the same thing. So we were not speculating. We wanted to let the jury know that there was a ring in Woodburn that had these instrumentalities that were completely inconsistent with how the driver's license was described by Lopez Diaz. And it was critical testimony, Your Honors. Thank you. Thank you for your advocacy. Both of you will take that case under advisement.
judges: CHRISTEN, HURWITZ, BADE